UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE,
AT KNOXVILLE

| | |
|---|---|
| KENNETH L. KELLEY, as the son, next of kin, and heir at law of JIMMY L. KELLEY, deceased, )<br>)<br>)<br>)<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>)<br>)<br>PRECISION MEDICAL, INC., )<br>)<br>JOHN DOE, )<br>)<br>APRIA HEALTHCARE, INC., )<br>)<br>INVACARE CORPORATION, )<br>)<br>SHERWOOD HARSCO CORPORATION )<br>GAS & FLUID CONTROL GROUP, )<br>)<br>SHERWOOD VALVE, )<br>)<br>SHERWOOD VALVE, LLC, )<br>)<br>TAYLOR-WHARTON INTERNATIONAL, )<br>LLC, )<br>)<br>HARSCO CORPORATION, )<br>)<br>WIND POINT ADVISORS, LLC, )<br>)<br>and )<br>)<br>WIND POINT PARTNERS )<br>)<br>Defendants. ) | Civil No: 3:13-cv-00096<br>JURY DEMANDED<br>BUNNING/GUYTON |

**THIRD AMENDED COMPLAINT**

Comes now the Plaintiff, through counsel, and for his cause of action does hereby

1

allege and say the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter because the amount in controversy exceeds $75,000.00 and because of diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332. The incident complained of herein took place in Knox County, TN. Therefore, jurisdiction and venue are proper in this Court.

## PARTIES

2. Kenneth L. Kelley is the son, next of kin, and heir at law to Jimmy L. Kelley (hereinafter "Decedent") and at all times relevant to this incident, and remains, a citizen of the State of Tennessee.

3. Defendant Precision Medical, Inc. is a Pennsylvania corporation, with a principal office located at 300 Held Drive, Northampton, PA 18067, that transacted business and sold its products within the State of Tennessee and committed tortuous acts within the State of Tennessee causing damage to persons within the State of Tennessee. Defendant Precision Medical, Inc. is in the business of selling various products for use in the home health industry, including devices commonly referred to as conserving regulators.

4. Defendant Invacare Corporation is an Ohio corporation, with a principal office believed to be located at One Invacare Way, Elyria, OH 44035, that transacted business and sold its products within the State of Tennessee and committed tortuous acts within the State of Tennessee causing damage to persons within the State of Tennessee. Defendant Invacare Corporation is in the business of selling various products for use in the home health industry, including devices commonly referred to as oxygen concentrators.

5.     Defendant John Doe is an unknown person or entity, with an unknown principal office, that transacted business and sold its products within the State of Tennessee and committed tortuous acts within the State of Tennessee causing damage to persons within the State of Tennessee.  Defendant John Doe is in the business of selling oxygen tanks.

6.     Defendant Apria Healthcare, Inc. is a Delaware corporation, with a principal office located at 26220 Enterprise Court, Lake Forest, CA 92630 that transacted business and sold its products within the State of Tennessee and committed tortuous acts within the State of Tennessee causing damage to persons within the State of Tennessee. Defendant Apria Healthcare, Inc. is in the business of selling and/or leasing various products for use in the home health industry, including oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks.

7.     Defendant Sherwood Harsco Corporation Gas & Fluid Control Group is believed to be a New York company, with a principal office believed to be located at 2111 Liberty Drive, Niagara Falls, New York 14304-37444, that transacted business and sold its products within the State of Tennessee and committed tortuous acts within the State of Tennessee causing damage to persons within the State of Tennessee.  Defendant Sherwood Harsco Corporation Gas & Fluid Control Group is in the business of selling various products for use in the home health industry, including devices commonly referred to as post-valves.

8.     Defendant Sherwood Valve and/or Sherwood Valve, LLC is a Delaware limited liability company, with a principal office believed to be located at 2200 North Main Street, Washington, Pennsylvania 15301, or, 1201 W. 65th Street, Cleveland, Ohio 44102-2107, that transacted business and sold its products within the State of Tennessee and

committed tortuous acts within the State of Tennessee causing damage to persons within the State of Tennessee. Defendant Sherwood Valve and/or Sherwood Valve, LLC is in the business of selling various products for use in the home health industry, including devices commonly referred to as post-valves.

9. Defendant Taylor-Wharton International LLC, is a Delaware limited liability company, with a principal office believed to be located at 4718 Old Gettysburg Road, Suite 300, Mechanicsburg, Pennsylvania 17055-8414, that transacted business and sold its products within the State of Tennessee and committed tortuous acts within the State of Tennessee causing damage to persons within the State of Tennessee. Defendant Taylor-Wharton International LLC is in the business of selling various products for use in the home health industry, including devices commonly referred to as post-valves.

10. Defendant Harsco Corporation is a Delaware corporation, with a principal office believed to be located at 350 Poplar Church Road, Camp Hill, Pennsylvania 17011-2521, that transacted business and sold its products within the State of Tennessee and committed tortuous acts within the State of Tennessee causing damage to persons within the State of Tennessee. Defendant Harsco Corporation is in the business of selling various products for use in the home health industry, including devices commonly referred to as post-valves.

11. Defendant Wind Point Advisors LLC and/or Wind Point Partners is a Delaware corporation, with a principal office believed to be located at 676 N. Michigan Avenue, Suite 3700, Chicago, Illinois 60611-2838, that transacted business and sold its products within the State of Tennessee and committed tortuous acts within the State of Tennessee causing damage to persons within the State of Tennessee. Defendant Wind Point

Advisors LLC and/or Wind Point Partners is in the business of selling various products for use in the home health industry, including devices commonly referred to as post-valves.

## NATURE OF THE CASE

12. At the time of his death, Decedent was residing in a travel camper on Plaintiff's property.

13. Decedent, age 72 at the time of his death, was required to use oxygen for a variety of health reasons.

14. Decedent's oxygen was supplied to him via several devices.

15. These devices included various oxygen tanks, regulators, conserving regulators, post-valves, and an oxygen concentrator.

16. These devices were used to deliver to Decedent the oxygen he needed.

17. This use was the activity for which these devices were manufactured, designed, and advertised.

18. Based upon information and belief, Defendant Invacare Corporation manufactured and sold the oxygen concentrator.

19. Based upon information and belief, Defendant Precision Medical, Inc. manufactured and sold the conserving regulators.

20. Based upon information and belief, Defendant John Doe manufactured and sold the oxygen tanks.

21. Based upon information and belief, Apria Healthcare, Inc. provided these devices to Decedent.

22. Based upon information and belief, Defendants Sherwood Harsco Corporation Gas & Fluid Control Group, Sherwood Valve, Sherwood Valve, LLC, Taylor-Wharton International, LLC, Harsco Corporation, Wind Point Partners, and/or Wind Point Advisors, LLC manufactured and sold the post-valves.

23. Based upon information and belief, these devices, which were intended to safely deliver oxygen to the Decedent, leaked oxygen.

24. At approximately 7:00 AM on February 21, 2012, a fire erupted in Decedent's travel camper.

25. Decedent's was killed by this fire and he was pronounced dead at the scene.

**First Cause of Action - TENNESSEE PRODUCTS LIABILITY ACT § 29-28-101**

26. Plaintiff re-alleges paragraphs 1-25 and would further state the following:

27. Defendants are liable pursuant to Tenn. Code Ann. § 29-28-105 (a) for manufacturing, assembling, selling and otherwise distributing a product which is in a defective condition or unreasonably dangerous, and therefore are strictly liable for the injuries to plaintiff.

28. The conserving regulator manufactured, sold, and distributed by Defendant Precision Medical, Inc., was in a defective condition, as defined by T.C.A. § 29-28-102(2).

29. The conserving regulator manufactured, sold, and distributed by Defendant Precision Medical, Inc. is unreasonably dangerous as defined by T.C.A. § 28-29-102(8) in that it was unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge

common to the community as to its characteristics. Further, the conserving regulator is unreasonably dangerous such that it would not have been put on the market by a reasonably prudent manufacturer or seller. Further, it is plaintiff's allegation that Defendant knew of its dangerous condition.

30. The oxygen concentrator manufactured, sold, and distributed by Defendant Invacare Corporation was in a defective condition, as defined by T.C.A. § 29-28-102(2).

31. The oxygen concentrator manufactured, sold, and distributed by Defendant Invacare Corporation is unreasonably dangerous as defined by T.C.A. § 28-29-102(8) in that it was unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics. Further, the oxygen concentrator is unreasonably dangerous such that it would not have been put on the market by a reasonably prudent manufacturer or seller. Further, it is plaintiff's allegation that Defendant knew of its dangerous condition.

32. The oxygen tanks manufactured, sold, and distributed by Defendant John Doe were in a defective condition, as defined by T.C.A. § 29-28-102(2).

33. The oxygen tanks manufactured, sold, and distributed by Defendant John Doe are unreasonably dangerous as defined by T.C.A. § 28-29-102(8) in that it was unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics. Further, the oxygen tank is unreasonably dangerous such that it would not have been put on the market by a reasonably prudent manufacturer or seller. Further, it is plaintiff's allegation that Defendant knew of its dangerous condition.

34. The post-valves manufactured, sold, and distributed by Defendants Sherwood Harsco Corporation Gas & Fluid Control Group, Sherwood Valve, Sherwood Valve, LLC, Taylor-Wharton International, LLC, Harsco Corporation, Wind Point Partners, and/or Wind Point Advisors, LLC were in a defective condition, as defined by T.C.A. § 29-28-102(2).

35. The post-valves manufactured, sold, and distributed by Sherwood Harsco Corporation Gas & Fluid Control Group, Sherwood Valve, Sherwood Valve, LLC, Taylor-Wharton International, LLC, Harsco Corporation, Wind Point Partners, and/or Wind Point Advisors, LLC are unreasonably dangerous as defined by T.C.A. § 28-29-102(8) in that they are unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics. Further, the post-valves are unreasonably dangerous such that they would not have been put on the market by a reasonably prudent manufacturer or seller. Further, it is plaintiff's allegation that Defendant knew of their dangerous condition.

36. Under the Tennessee Products Liability Act § 29-28-101 – § 29-28-108, one who manufactures or sells a defective or unreasonably dangerous product is responsible to the ultimate consumer of the product for physical harm caused to the consumer or the consumer's property if:

  a. The manufacturer or seller is engaged in the manufacturing or selling of such a product; and

  b. It is expected to and does reach the user or consumer without substantial change in the condition in which it was manufactured or sold.

8

37. As a direct and legal cause of defendants' defective and/or unreasonably dangerous product, Decedent was killed.

38. The Defendants' products were expected to and did reach the Plaintiff without substantial change in their condition as manufactured, manipulated and sold by the defendants.

39. The Plaintiff used the oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks and these products' component parts in the manner in which the products were intended to be used, that is, for personal consumption, causing and/or subjecting the Plaintiff to harm.

40. The Plaintiff was not aware of, and reasonably could not have discovered, the harmful nature of the oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks and component parts they purchased, because the products were marketed and sold without adequate warnings of their dangers.

41. Defendants are jointly and severally liable for the negligence and/or other actions of the manufacturers of the component parts that make up Defendants' product.

42. As a direct and proximate result of the fault of the Defendants, the Plaintiffs have suffered damages in an amount to be proven at trial. The Defendants, therefore, are liable to the Plaintiffs for all general, special, and equitable relief to which the Plaintiffs are entitled by law.

**Second Cause of Action - Breach of Express Warranty**

43. Plaintiffs re-allege, as if fully set forth, each and every allegation contained in paragraphs 1 through 42 above, and further allege:

44. Defendants' advertisements and promotional statements alleged above contained broad claims amounting to a warranty that Defendants' products were not harmful.

45. As alleged above, Defendants breached their warranties by offering for sale, and selling as non-harmful, Defendants' products that were in fact harmful.

46. Defendants' breach of their express warranties has caused Plaintiffs to suffer damages in an amount to be proven at trial.

### Third Cause of Action - Breach of Implied Warranty of Merchantability

47. Plaintiffs re-allege, as if fully set forth, each and every allegation contained in paragraphs 1 through 46 above, and further allege:

48. Defendants impliedly warranted that their consumer products, which they designed, manufactured, and sold to Plaintiff, were merchantable and fit and safe for their ordinary use.

49. Defendants' products purchased and consumed by Plaintiff were dangerous, harmful, unmerchantable, and unfit for use when sold. Therefore, Defendants breached the implied warranty of merchantability at the time Defendants' products were sold to Plaintiffs in that the Defendants' products were not fit for their ordinary purposes. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff was subject to harm by Defendants' products and have suffered damages in an amount to be proven at trial.

## Fourth Cause of Action - Breach of Implied Warranty of Fitness for Particular Purpose

50. Plaintiff re-alleges, as if fully set forth, each and every allegation contained in paragraphs 1 through 49 above, and further alleges

51. Defendants impliedly warranted that their products, which they designed, manufactured, and sold to Plaintiffs, were fit for the particular purpose for which they were intended.

52. Defendants had reason to know the particular purpose for which their products were required. Plaintiff knew the particular purposes for which he intended to use Defendants' products. Defendants knew that Plaintiff was relying on Defendants' skill or judgment to furnish suitable products. The Defendants' products were not fit for the particular purpose for which they were required because the parts and components of the products, even when properly assembled, posed a serious danger of malfunctioning and leaking oxygen and/or causing and/or intensifying a fire. This caused the Plaintiff to be exposed to grave and severe bodily harm. The unfitness of the oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks and component parts for home use was a proximate cause of damages to the Plaintiff, and Defendants would reasonably have expected Plaintiff to consume the product.

53. As a direct and proximate result of Defendants' breach of the implied warranty of fitness for a particular purpose, Plaintiff is entitled to actual and punitive damages.
As a direct and proximate result of Defendants' negligence, Plaintiff was subject to harm by Defendants' products and has suffered damages in an amount to be proven at trial.

### Fifth Cause of Action - Common Law Negligence

54. Plaintiff re-alleges, as if fully set forth, each and every allegation contained in paragraphs 1 through 53 above, and further alleges:

55. Defendants, as the manufacturers of a product, had a duty to use reasonable care in designing, manufacturing, testing and inspecting the product so that the product could be safely used in the manner and for the purpose for which it was made.

56. Defendants likewise had a duty to use reasonable care in the selection, testing and inspection of any components parts made by another so that the product could be safely used in the manner and for the purpose for which it was made.

57. Defendants failed to use reasonable care in designing, manufacturing, selecting, testing and/or inspecting the oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks and component parts so that they could be safely used.

58. Defendants' fail9ure to use reasonable care as alleged above constitutes negligence.

59. Defendant is jointly and severally liable for the negligence and/or other actions of the manufacturers of the component parts that make up Defendants' product.

60. As a direct and proximate result of Defendants' negligence, Plaintiffs has suffered damages in an amount to be proven at trial.

### Sixth Cause of Action - Strict Liability

61. Plaintiff re-alleges, as if fully set forth, each and every allegation contained in paragraphs 1 through 60 above, and further alleges:

62. Defendants manufactured, sold, distributed, marketed, and placed in commerce the aforementioned oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks in a defective condition by reason of which said oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks were unreasonably dangerous to the Plaintiffs.  The said defective and dangerous condition proximately caused the above-described injuries while the oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks were being used for their ordinary and intended purposes in an ordinary intended manner.  The subject oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks were not altered or modified by Plaintiff, except for normal wear and as a result of the fire.  Thus, these Defendants are strictly liable to the Plaintiff pursuant to the laws of the State of Tennessee under the Theory of Strict Liability in Tort, Section 402A, Restatement of Torts, Second, in that the subject oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks were in a defective or unreasonably dangerous condition at the time these products left the control of the Defendants.

63. The Plaintiffs allege that at the time and date of the Defendants placing the oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks into the channels of commerce, and for a time prior thereto, the Defendants were ordinarily engaged in the business of designing, manufacturing, assembling, advertising and selling oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks and their component parts to members of the public for the use thereafter by members of the public, including the Plaintiff.  The Defendants are liable to

13
Case 3:13-cv-00096-PLR-HBG   Document 111   Filed 04/18/14   Page 13 of 19   PageID #: 595

the Plaintiff under the Theory of Strict Liability Tort, Section 402A, Restatement of Torts, Second, in that the subject oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks were in a defective or unreasonably dangerous condition at the time said products left the control of the Defendants.

64. Plaintiffs aver that the subject oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks were unreasonably dangerous in that the oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks were dangerous to an extent beyond that contemplated by an ordinary consumer and further that the Defendants, in knowing the product's dangerous or harmful condition, would not have marketed this oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks if they had been prudent manufacturers or reasonable manufacturers. Therefore the Plaintiff avers that the Defendants were not reasonably prudent in the manufacture, marketing, sale and introduction of these oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks to the consumer and the oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks was unreasonably dangerous according to the prudent manufacturer test adopted in Tennessee.

65. The unreasonably dangerous nature of the above-described defective products creates a high probability that the oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and/or oxygen tanks will be involved in accidents resulting in loss of human life and/or severe and permanent personal injuries. Defendants knew of the risk before producing and marketing the subject oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks and, in conscious disregard of the

14
Case 3:13-cv-00096-PLR-HBG   Document 111   Filed 04/18/14   Page 14 of 19   PageID #: 596

consequences, willfully and wantonly manufactured and sold these products which caused the Plaintiff's injuries.

66. The Defendants' failure to equip its oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks with proper safety mechanisms, including, but not limited to, mechanisms that would prevent oxygen from leaking and/or mechanisms that would have prevented the creation of a fire and/or prevented the intensity of the fire from increasing. At the time the defective oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks in question left the control of the Defendants, there was a safer alternative design that was economically and technologically feasible and that would have prevented or significantly reduced the risk of Plaintiff's injuries without substantially impairing the products utility.

67. The oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks had inadequate safety mechanisms in that they did not have proper mechanisms that would prevent oxygen from leaking and/or mechanisms that would have prevented the creation of a fire and/or prevented the intensity of the fire from increasing.

68. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages in an amount to be proven at trial.

**Seventh Cause of Action - Res Ipsa Locquitur**

69. Plaintiff re-alleges, as if fully set forth, each and every allegation contained in paragraphs 1 through 68 above, and further alleges:

70. Oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks do not normally leak oxygen or create fires.

71. Defendants were responsible for the selection, design, construction, installation, and/or manufacture of the oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks in question.

72. For the above reasons, the doctrine of Res Ipsa Loquitur applies.

73. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages in an amount to be proven at trial.

**Eighth Cause of Action - Failure to warn**

74. Plaintiff re-alleges, as if fully set forth, each and every allegation contained in paragraphs 1 through 73 above, and further alleges:

75. Defendants knew or had reason to know that their products were likely to be dangerous for their intended use or foreseeable misuse.

76. As such, Defendants had a duty to use reasonable care to warn of their products' danger or to reveal the products' unsafe condition.

77. Defendants had a duty to give these warnings to those persons whom the Defendants should reasonably expect to use or to handle the products or be endangered by the products' use or handling, as it was reasonable to believe that those persons would not realize the danger without the warnings.

78. Plaintiff did not receive these warnings.

79. For the above reasons, Defendants actions constitute negligence and Defendants are liable for their failure to warn.

80. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages in an amount to be proven at trial.

### Ninth Cause of Action – Seller's Failure to Inspect

81. Plaintiff re-alleges, as if fully set forth, each and every allegation contained in paragraphs 1 through 80 above, and further alleges:

82. Defendant Apria Healthcare, Inc. had reason to know that the products it sold or leased to Plaintiff were likely to be unreasonably dangerous or defective.

83. Defendant Apria Healthcare, Inc. had a duty to use reasonable care to inspect and test the products that it sold

84. Defendant Apria Healthcare, Inc. did not inspect or test these products prior to selling them.

85. For the above reasons, Defendant Apria Healthcare, Inc. was negligent and is liable for this failure to inspect.

86. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered damages in an amount to be proven at trial.

### Tenth Cause of Action – Seller Liability Under
### Tennessee Products Liability Act § 29-28-106

87. Plaintiff re-alleges, as if fully set forth, each and every allegation contained in paragraphs 1 through 86 above, and further alleges:

88. Defendant Apria Healthcare, Inc., exercised substantial control over the aspect of the design, testing, manufacture, packaging, or labeling of the oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks in question.

89.     Defendant Apria Healthcare, Inc., altered or modified the oxygen regulators, oxygen concentrators, conserving regulators, post-valves, and oxygen tanks in question, and these alterations or modifications were a substantial factor in causing the harm Plaintiff suffered.

90.     For the above reasons, Defendant Apria Healthcare, Inc. is liable under the Tennessee Products Liability Act.

91.     As a direct and proximate result of Defendant's negligence, Plaintiff has suffered damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

92.     Jimmy L. Kelley was 72 years of age and enjoyed good health when he died; he had a life expectancy of many years, had a substantial capacity to earn money in any art, trade or profession, had good personal habits for industry, had good personal habits for sobriety, and had established earning capacity. Plaintiff has incurred medical and funeral expenses; as next of kin, he brings this action for the mental and physical suffering of Jimmy L. Kelley, necessary expenses, and other damages for wrongful death recoverable under T.C.A. §20-5-113.  In addition, the heirs of Jimmy L. Kelley aver that they suffered loss of the consortium or society of the deceased, which included not only the tangible benefits but also those intangible benefits received from a father, such as attention, guidance, care, protection, training, companionship, affection, solace and love.

WHEREFORE, plaintiff sues the defendants for five million dollars ($5,000,000.00) compensatory damages, two million dollars ($2,000,000.00) punitive damages, and for costs, and demands a jury to try the issues joined.

Respectfully submitted, this 18th day of April, 2014.

/s/ Dan C. Stanley
Dan C. Stanley, BPR 021002
Stanley & Kurtz, PLLC
422 South Gay Street, Suite 301
Knoxville, TN 37902
865-522-9942

and

/s/ Eric B. Foust
Eric B. Foust, BPR 029808
Law Offices of Eric B. Foust
422 South Gay Street, Suite 302
Knoxville, TN 37939
865-250-5182

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Pleading was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail, postage prepaid. Parties may access this filing through the Court's electronic filing system.

/s/ Eric B. Foust