UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KENNETH KELLEY, as the son, next of kin and heir at law of JIMMY L. KELLEY, deceased,<br><br>Plaintiff,<br><br>v.<br><br>APRIA HEALTHCARE, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>) No. 3:13-CV-96-PLR-HBG<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is the Plaintiff's Motion to Exclude Defendant's Expert Witnesses and/or Motion in Limine Regarding Expert Testimony [Doc. 280]. The parties appeared before the Court on December 21, 2016, for a motion hearing. Attorney Dan Stanley appeared on behalf of the Plaintiff. Attorneys Nathan Mauer and James Looper, Jr., appeared on behalf of the Defendant. After considering the parties' filings and the oral arguments, the Court finds that the Plaintiff's Motion to Exclude Defendant's Expert Witnesses and/or Motion in Limine Regarding Expert Testimony [Doc. 280] is not well-taken, and it is **DENIED**.

I.  BACKGROUND

The original Complaint in this case was filed on February 20, 2013, and later amended [Doc. 182] on August 17, 2015. The Fourth Amended Complaint stems from an incident occurring on February 21, 2012, wherein a fire erupted in a traveling camper killing the occupant. The decedent's son originally brought suit against several companies that manufactured and sold certain devices, including oxygen regulators, that the decedent was

allegedly using. The Fourth Amended Complaint alleges that the Defendant provided several of the devices to the decedent but failed to instruct him on how to properly use such devices. In addition, the Plaintiff alleges that the Defendant's oxygen devices leaked oxygen.

Relevant to the instant action, the Plaintiff has moved to exclude the Defendant's experts.

## II. POSITIONS OF THE PARTIES

As mentioned above, the Plaintiff has moved to exclude two witnesses offered by the Defendant: (1) Joseph T. Hannan, M.D., and (2) Jerry Carter. The Court will first summarize the parties' positions with respect to Dr. Hannan's opinion and then turn to the parties' positions with respect to Mr. Carter's opinions.

*(a) Dr. Hannan*

Dr. Hannan opined that the decedent experienced a significantly diminished quality of life and that due to his medical conditions, the decedent was at or nearing the end of his life and would have died within, at best, a year to eighteen (18) months had he not died in this incident. The Plaintiff argues that Dr. Hannan is not qualified to give an opinion as to the decedent's life expectancy and that his opinions are not based on any scientific basis or facts and are mere conjecture. With respect to Dr. Hannan's opinion on the decedent's life expectancy, the Plaintiff states that Dr. Hannan is a medical doctor but not a pulmonologist, pathologist, or a forensic pathologist and does not have expertise in such fields. The Plaintiff acknowledges that Dr. Hannan has experience in hospice care but submits that the decedent was not a hospice patient. The Plaintiff avers that an expert in internal medicine, geriatrics, or hospice care should not be qualified to opine on life expectancy. The Plaintiff states that any prediction as to a specific life expectancy for a person would be conjecture.

In addition, the Plaintiff argues that Dr. Hannan was unable to provide any type of scientific or other reliable basis for his opinions. The Plaintiff states that when asked about his opinion, Dr. Hannan seemed to rely upon his review of the medical records regarding the decedent's lung capacity. The Plaintiff submits that Dr. Hannan acknowledged that his prediction was not based on any modeling, case studies, or peer-reviewed methods that would allow him to quantify the eighteen-month life expectancy.

With respect to Dr. Hannan's opinion regarding the decedent's diminished life quality, the Plaintiff submits that the opinion is not helpful to the jury. The Plaintiff states that the medical records speak for themselves. In the alternative, the Plaintiff requests that Dr. Hannan be prevented from testifying as to the decedent's life expectancy.

The Defendant responds that Dr. Hannan has been practicing medicine since 1978 and was formerly board certified as an Internist. The Defendant submits that Dr. Hannan has practiced in pediatrics, internal medicine, geriatrics, and hospice care for over 40 years and that he has served as a medical director for numerous long-term care and hospice facilities. The Defendant argues that Dr. Hannan has significant experience in taking care of individuals with terminal illnesses, including patients with long-term diseases, such as COPD and patients receiving oxygen. The Defendant states that Dr. Hannan is qualified to reach a prognosis regarding the decedent's illness at the time of his death and his remaining life expectancy. The Defendant argues that Dr. Hannan's method in forming a prognosis was based on his review of the decedent's medical history and condition prior to the time of his death and his understanding of and experience in treating patients with similar diseases, in similar stages.

*(b) Jerry Carter*

The Plaintiff submits that Mr. Carter is a qualified fire investigator, who opined that the cause of fire could not be determined because none of the potential causes could be indicated or eliminated. The Plaintiff states that Mr. Carter listed seven potential causes of the fire, but there is no evidence to support any of these potential causes, except the presence of a space heater. The Plaintiff states that five of the seven listed potential causes involve the failure of some device or the camper's electrical system, but there is no evidence in this case that anything failed. In addition, the Plaintiff argues that smoking is also listed as a potential cause of the fire even though there is no evidence that the decedent was smoking at the time of the fire.

In the alternative, the Plaintiff requests that Mr. Carter be excluded from testifying as to the potential causes of the fire, that the decedent was smoking prior to the incident, that the incident was caused by the decedent's smoking, or that any of the medical devices that the decedent was using or any of these devices' component parts were defective, malfunctioned, or were the source of ignition or cause of the fire that killed the decedent.

The Defendant responds that Mr. Carter's testimony is necessary to challenge the testimony of the Plaintiff's experts. The Defendant argues that Mr. Carter's opinions take issue with the reports from the Plaintiff's experts regarding ignition sequence, first material ignited, and to the indication or elimination of potential causes for the fire. The Defendant argues that Mr. Carter's opinions on the potential causes of the fire, the degree to which the environment was oxygen enriched, whether the camper had any source of ventilation, and the likelihood that the space heater was the source of the fire or even present inside the camper when the fire occurred, are relevant and will assist the jury in determining an issue of fact.

In addition, the Defendant argues that Mr. Carter should be permitted to testify that smoking and/or cigarettes were a potential source of the fire. The Defendant argues that the Plaintiff's own experts identify smoking or attempting to light smoking materials as a potential source. The Defendant asserts that Mr. Carter's testimony is essential to the defense in the sense that as an expert, he can rebut the Plaintiff's attempt to suggest to the jury, through his own experts, that the space heater was the most likely cause of the fire. Finally, the Defendant argues that the Plaintiff has not challenged the reliability of Mr. Carter's methods in determining that cigarettes were a potential cause of the fire, but rather is attacking his conclusion, characterizing it as speculative based on the Plaintiff's perception of the evidence. The Defendant argues that the test for admissibility of an expert opinion is not whether a particular expert opinion has the best foundation but rather whether the particular opinion is based on valid reasoning and reliable terminology.

## III. ANALYSIS

The Court has considered the parties' positions, and for the reasons explained below, the Court finds the Plaintiff's Motion [Doc. 280] not well-taken, and it is **DENIED.**

Federal Rule of Evidence 702 governs the admission of expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court of the United States stated that a district court, when evaluating evidence proffered under

Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Id. at 589. The Daubert standard "attempts to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." Best v. Lowe's Home Ctrs., Inc., 563 F.3d 171, 176–77 (6th Cir. 2009).

The factors relevant in evaluating the reliability of the testimony, include: "whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted within the scientific community." Coffey v. Dowley Mfg., Inc., 187 F. Supp. 2d 958, 970-71 (M.D. Tenn. 2002) (citing Daubert, 509 U.S. at 593–94). "Although Daubert centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." Rose v. Sevier Cnty., Tenn., No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 138-39 (1999)). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." Coffey, 187 F. Supp. 2d at 70-71 (quoting Daubert, 509 U.S. at 593-94).

The Rule 702 inquiry as "a flexible one," and the Daubert factors do not constitute a definitive checklist or test. Kumho Tire Co., 526 U.S. at 138-39 (citing Daubert, 509 U.S. at 593). Although the Rule 702 requirements are treated liberally, "'that does not mean that a witness is an expert simply because he claims to be.'" Coffey, 187 F. Supp. 2d at 971 (citing Pride v. BIC Corp., 218 F.3d 566, 577 (6th Cir. 2000)).

With the above analysis in mind, the Court turns to the Plaintiff's arguments in this case.

*(a) Dr. Hannan*

With respect to Dr. Hannan's opinion regarding the decedent's life expectancy, the Plaintiff argues that Dr. Hannan is not qualified and that there is no reliable basis for his opinion. In addition, the Plaintiff submits that Dr. Hannan's opinion regarding the decedent's diminished quality of life will not assist the jury.

The Court finds that Dr. Hannan is qualified to testify regarding the decedent's life expectancy. Dr. Hannan is an internist/geriatrician and has been practicing internal medicine and geriatrics since 1985. In addition, he has been involved in hospice care since 1996. He has served as the medical director in several skilled nursing homes and hospice associations. In his expert report [Doc. 281-1] dated September 15, 2015, he noted that he was currently in group practice with Georgia Long Term Care and that he also served as a medical director at a nursing home. Dr. Hannan has experience in taking care of individuals with terminal illnesses, including patients with lung diseases such as COPD and patients receiving medical oxygen. Moreover, Dr. Hannan testified that he has experience certifying individuals for hospice care, which requires a finding that their prognosis is terminal with six months or less to live. Although the Plaintiff challenges Dr. Hannan's testimony on the basis that he is not a pulmonologist, pathologist, or a forensic pathologist, the Court agrees with the Defendant in that "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." Starnes v. Sears Roebuck & Co., No. 01-2894, 2005 WL 3434637, *2 (W.D. Tenn. Dec. 14, 2005) (quoting Fed. R. Evid. 702 Advisory Committee's Notes) (2000 amendment)).

The Plaintiff also argues that Dr. Hannan's opinion is not reliable. In opining on the decedent's life expectancy, Dr. Hannan relied on his experience, two medical articles, the National Vital Statistics Report published by the Centers for Disease Control and Prevention, and

the decedent's medical records. [Doc. 281-1]. The Court notes that any defects in Dr. Hannan's opinion can be adequately addressed on cross-examination. Accordingly, the Plaintiff's arguments are not well-taken.

With respect to Dr. Hannan's opinions regarding diminished quality of life, the Court finds that this opinion will be helpful to the jury in understanding how the decedent's medical conditions affected his life. Accordingly, the Plaintiff's Motion with respect to Dr. Hannan is **DENIED**.

*(b) Mr. Carter*

The Plaintiff acknowledges that Mr. Carter is a qualified fire investigator. The Plaintiff argues, however, that Mr. Carter's report express opinions regarding the potential causes, but there is no evidentiary support for those potential causes. For example, the Plaintiff argues that Mr. Carter lists five potential causes that involve the failure of some device or the camper's electrical system, but there is no evidence that anything failed. In addition, the Plaintiff submits that smoking is listed as a potential cause, but there is no evidence to support that the decedent was smoking at the time of the accident.

The Court finds Mr. Carter's opinion relevant in attempting to rebut the Plaintiff's expert's opinion and that mere "weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility." United States v. L.E. Cooke Co., 991 F.2d 336, 342 (6th Cir. 1993). The Plaintiff's concerns can be adequately explored through cross-examination. Accordingly, the Court finds the Plaintiff's argument not well-taken.

## IV. CONCLUSION

For the same reasons explained above, the Court will deny the Plaintiff's alternative requests. Accordingly, based on the foregoing conclusions, the Court hereby **DENIES** Plaintiff's Motion to Exclude Defendant's Expert Witnesses and/or Motion in Limine Regarding Expert Testimony [**Doc. 280**].

**IT IS SO ORDERED.**

ENTER:

*Bruce Guyton*
United States Magistrate Judge